UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARTIN CISNEROS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 3:11-0804 |
| ) | Judge Campbell/Bryant |
| METRO NASHVILLE GENERAL ) | **Jury Demand** |
| HOSPITAL, *et al.*, ) | |
| ) | |
| Defendants ) | |

**TO: THE HONORABLE TODD J. CAMPBELL**

<u>**REPORT AND RECOMMENDATION**</u>

Defendant The Hospital Authority of the Metropolitan Government of Nashville and Davidson County, which does business as Metropolitan Nashville General Hospital ("MNGH"), has filed its motion for summary judgment (Docket Entry No. 151). This motion is supported by the declaration of Dr. Daniel Scott Weikert (Docket Entry No. 151-1). Plaintiff Cisneros has responded in opposition (Docket Entry Nos. 172, 173, 174 and 175). Defendant has filed a reply (Docket Entry No. 179) and Plaintiff Cisneros has responded to the reply by filing certain supplemental documents (Docket Entry No. 182).

For the reasons stated below, the undersigned Magistrate Judge recommends that Defendant's motion for summary judgment be GRANTED and the complaint dismissed with prejudice.

**STATEMENT OF THE CASE**

Plaintiff Cisneros, who is proceeding *pro se* and in *forma pauperis*, has filed this action pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"). Plaintiff Cisneros alleges that he suffered injuries to his right

eye, including eventual blindness, as a result of the failure of Defendant MNGH to perform an appropriate medical screening examination when Plaintiff Cisneros came to the hospital's emergency department on three occasions in February 2010. Plaintiff Cisneros alleges that as a result of the hospital's failure to perform an appropriate medical screening examination, and to render care that such an examination would have indicated, he has lost the vision in his right eye. Plaintiff Cisneros seeks to recover money damages for the personal injuries resulting from MNGH's failure to render the screening required by statute.

Defendant has denied liability (Docket Entry No. 113) and has filed its motion for summary judgment.

**Summary of the Pertinent Facts**[1]

Plaintiff Cisneros came to the emergency department at MNGH on February 21, 2010, complaining of pain and a foreign body sensation in his right eye which had existed for the previous two days. His eye was examined, but the hospital staff was unable to measure his vision in the right eye because of swelling of the tissue around the eye. The examination showed that Plaintiff Cisneros did have a red and swollen right eyeball and that the swelling likely involved the surrounding tissue as well. This condition was diagnosed as conjunctivitis. He was given Gentamicin drops (an antibiotic) and instructions to see his doctor or an eye specialist if his symptoms were not better after three days of

---

[1]This factual summary is based upon Plaintiff's medical records (Docket Entry Nos. 154, 156, 157 and 158) and the declaration of Dr. Daniel Weikert (Docket Entry No. 151-1).

treatment, or if he had increased pain or trouble seeing, or if the outer eyelids became very red or swollen.

Plaintiff Cisneros returned to the MNGH emergency department on February 23, 2010. He was unable to open his right eye due to redness and swelling. He complained of a foreign body sensation that was treated with an anesthetic drop. Upon examination, it was noted that the pupils of his eyes were equal at that time, but that it appeared that he had a corneal abrasion on his right eye. Plaintiff Cisneros was prescribed 15 Darvocet-N 100 (a pain medication containing the narcotic propoxyphene), Gentamicin ointment (an antibiotic), and 20 Naprosyn 500 (a nonsteroidal anti-inflammatory medication). Plaintiff Cisneros was given instructions that included contacting his doctor if his symptoms were not improved in two or three days, or if he had increased pain, swelling or problems with his vision.

On February 27, 2010, Plaintiff Cisneros returned for a third time to the MNGH emergency department with continuing complaints of pain in his right eye. Apparently some form of verbal altercation occurred, the details of which are disputed by the parties. In any event, it is undisputed that Plaintiff Cisneros was escorted from the emergency department by hospital security.

On March 2, 2010, Plaintiff Cisneros went to the emergency room at Skyline Medical Center with a complaint of a red and painful right eye. Upon examination he was found to have zero vision in his right eye. His right pupil was noted to be 2 mm and fixed and the cornea was steamy, but the examiner was unable to view his retina. His intraocular pressure was 51 in the right eye

3

and 21 in the left eye. Plaintiff Cisneros was then seen by Dr. Meredith Ezell at Summit Eye Associates on March 2, 2010. Dr. Ezell diagnosed Plaintiff Cisneros as having neovascular glaucoma secondary to diabetes. He was treated with three different types of eye drops and given an appointment to be seen at the opthalmology clinic at MNGH on March 4, 2010.

Upon examination at this clinic visit, vision in Plaintiff Cisneros's right eye was found to be "hand motion." An examination also revealed neovascularization of the iris and that the angle was felt to be the cause of the high intraocular pressure in the right eye. Despite having been treated with eye drops, the intraocular pressure in the right eye remained at 44. The back of the eyes showed severe diabetic changes in both eyes with increased cupping on both eyes suggestive of glaucoma. Plaintiff Cisneros was diagnosed with proliferative diabetic retinopathy of both eyes with neovascular glaucoma.

Plaintiff Cisneros was treated by means of laser treatment approximately three times over the following couple of weeks. Despite this laser treatment and treatment by Avastin injection, Plaintiff Cisneros's vision in his right eye continued to diminish from hand motion to light perception only. By March 25, 2010, the intraocular pressure in the right eye had reduced to 26. On May 26, 2010, following several visits, it was noted that vision in Plaintiff Cisneros's right eye had continued to diminish to light perception only despite treatments in the opthalmology clinic.

Over the next several months Plaintiff Cisneros experienced variations in intraocular pressures ranging from the mid-20s to the high 50s. Upon his last examination in 2013, the intraocular pressure in his right eye was 30 and appeared stable. Nevertheless, Plaintiff Cisneros continued to have neovascularization of the iris and the angle in his right eye with no resolution.

## STANDARD OF REVIEW

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the

5

moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

As grounds for its motion, MNGH makes two arguments: (1) that the undisputed evidence in this case fails to show proximate causation between any alleged EMTALA violation and Plaintiff Cisneros's alleged injury; and (2) the Tennessee Governmental Tort Liability Act ("TGTLA") limits the liability, if any, of MNGH to the statutory cap of $300,000. The undersigned will discuss these two grounds in the order presented.

<u>Causation of Injury</u>. Defendant MNGH argues that there is no genuine dispute of material fact for trial on the issue of causation of Plaintiff Cisneros's alleged injury, because the undisputed evidence shows that the nine-day delay between Plaintiff Cisneros's first visit to the MNGH emergency room and his March 2, 2010, visit to Skyline Medical Center did not affect his ultimate outcome nor his subsequent treatment.

EMTALA requires that any hospital that has an emergency department must provide "an appropriate medical screening examination," within the capability of the hospital, to any individual who comes to the emergency department and requests

6

examination or treatment for a medical condition. 42 U.S.C. § 1395dd(a). EMTALA also creates a personal right of action against a hospital for any individual who suffers personal harm as a result of a hospital's violation of the statute. This provision states as follows:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A).

Thus, in order to recover for a violation of EMTALA, a plaintiff must prove that he sustained injuries as a direct and proximate result of such violation. *Caristo v. Clark Regional Medical Center, Inc.*, 2009 WL 2710094, at *6 (E.D. Ky. Aug. 24, 2009).

For purposes of its pending motion for summary judgment only, Defendant MNGH does not contest the allegation that it violated EMTALA by failing to perform an appropriate medical screening examination when Plaintiff Cisneros came to the hospital's emergency room in February 2010 (Docket Entry No. 155 at 1 n.2). Instead, MNGH argues that the nine-day delay in treating Plaintiff Cisneros's right eye condition did not cause him any injury that otherwise would not have occurred. In support of this argument, MNGH has filed the declaration of Daniel Scott Weikert, M.D. (Docket Entry No. 151-1).

According to his declaration, Dr. Weikert is a physician licensed in Tennessee who specializes in the practice of ophthalmology at Vanderbilt University Medical Center. Dr. Weikert

7

is board certified by the American Board of Ophthalmology. He has practiced medicine in the specialty of ophthalmology since 1995 and has diagnosed and treated patients with various conditions and illnesses of the eye, including but not limited to diabetic retinopathy, glaucoma, and neovascular glaucoma. As the bases for his opinions, Dr. Weikert states that he has reviewed the medical records of Plaintiff Cisneros from MNGH, Skyline Hospital for the March 2, 2010, emergency department visit, and Summit Eye Associates. Copies of those medical records are filed as part of this court record.

After summarizing the course of Plaintiff Cisneros's treatment at MNGH and elsewhere, Dr. Weikert expresses the opinion that the cause of Plaintiff Cisneros's loss of vision was neovascular glaucoma secondary to diabetes, "a condition that was unnoticed yet had been deteriorating for at a minimum multiple months before he first presented to the MNGH emergency department on February 21, 2010" (Docket Entry No. 151-1 at 2). Dr. Weikert further testifies in his declaration that at the time of Plaintiff Cisneros's first visit to the MNGH emergency department on February 21, 2010, "the damage to his right eye was essentially complete," and that "[t]here was no medical treatment that could have been performed anywhere along and/or in conjunction with Mr. Cisneros's emergency room pathway – that began on February 21, 2010 – that would have changed the course of his vision." (*Id*.) Dr. Weikert further testifies that "[e]ven had Mr. Cisneros begun to receive treatment for neovascular glaucoma on February 21, 2010, the outcome would not have been different due to the severity of his illness that already existed." (*Id*. at 6). He further states that

"[t]he same pharmaceutical and laser surgery interventions that have been employed throughout Mr. Cisneros's treatment would have been employed even had treatment begun on February 21, 2010, simply due to the nature of his illnesses." (*Id*.).

Based upon the declaration testimony of Dr. Weikert, summarized above, MNGH argues that the alleged failure to perform an appropriate medical screening examination upon Plaintiff Cisneros in the MNGH emergency room as early as February 21, 2010, actually caused no additional damage to Plaintiff Cisneros that otherwise would not have occurred due to the severity of his previously undetected neovascular glaucoma secondary to his underlying diabetes.

In his response in opposition, Plaintiff Cisneros directs a good bit of his argument to the failure of MNGH to perform an appropriate medical screening examination during his three visits to its emergency department in February 2010 (Docket Entry No. 172). With respect to the opinions of Dr. Weikert, Plaintiff Cisneros argues that Dr. Weikert has never seen or treated him in person, that his opinions are based only upon medical records, and that his opinions are "skewed" because he is presumably being paid by the Defendants. Nevertheless, the undersigned Magistrate Judge finds that Plaintiff Cisneros's opinions upon the subject of medical causation fail to satisfy the evidentiary requirements of Rule 56(c)(4), which states as follows:

> An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

9

In contrast, the undersigned finds that the sworn declaration of Dr. Weikert on the issue of medical causation of Plaintiff Cisneros's blindness in his right eye, and subsequent medical treatment following his visits to MNGH, are admissible pursuant to the requirements of Rules 702 and 703 of the Federal Rules of Evidence.

As EMTALA is essentially a tort action, a plaintiff bears the burden of proving causation at trial. *Romine v. St. Joseph's Health System,* 2013 WL 5750095 at *3 (6th Cir. Oct. 24, 2013) (unpublished). Courts have recognized that lay jurors will usually have difficulty determining to what extent a plaintiff was harmed by the underlying condition that brought him to an emergency department as distinguished from harm caused by any delay in treatment. In an EMTALA case involving a plaintiff who was allegedly improperly treated when he came to defendant's emergency room with a severe hand laceration, the plaintiff established that he missed a month at work due to his injury. However, the plaintiff failed to offer any medical testimony regarding the amount of such loss of work caused by improper treatment by the defendant. Considering this lack of medical evidence, the court stated as follows:

> To the extent that Romine suffered harm from [defendant's] delay in treating him, there is no evidence in the record to allow a jury to decide how much harm was caused by the initial laceration and how much was caused by the treatment delay. Romine does not appear to have suffered permanent damage; his primary harm was missing one month of work. If he had provided testimony from a physician that but for the delay Romine would have missed only two weeks of work, a jury would have an evidentiary basis for finding [defendant] caused Romine harm in excess of that caused by the laceration. Here, without such evidence, the jury's only recourse to differentiate

10

> the harm caused by the laceration from the harm caused by inadequate treatment would be impermissible speculation. Thus, while medical expert testimony is not always needed to prove causation in EMTALA suits, it is necessary in cases such as Romine's where, to a significant extent, Romine's harm resulted from the initial injury.

*Romine*, 2013 WL 5750095 at *3.

The undersigned Magistrate Judge finds that such analysis applies here. It appears that Plaintiff Cisneros's blindness in his right eye was caused by neovascular glaucoma secondary to his diabetes, a condition that existed when he first arrived at the MNGH emergency room on February 21, 2010. The declaration testimony of Dr. Weikert expresses the opinion that this underlying medical condition, previously undetected, caused Plaintiff Cisneros's blindness and would have done so despite medical intervention even if such intervention had commenced on February 21, 2010. In the absence of competent medical evidence to the contrary, there can be no genuine dispute of material fact for trial on the issue of causation of Plaintiff Cisneros's injuries.

Plaintiff Cisneros argues that he has established a genuine issue for trial on the issue of causation by filing what purports to be a copy of findings on an "EMTALA Referral" by an unnamed physician reviewer (Docket Entry Nos. 55-1 and 185-1). Apparently, the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, sought a review by an unnamed physician, who was asked to determine whether the MNGH emergency department provided an appropriate medical screening examination to Mr. Cisneros in February 2010. The reviewer answered that question with "No" (Docket Entry No. 185-1 at 1). When requested to summarize the key facts of the case, the

reviewer concluded his summary with the following sentence: "The patient lost vision in the affected eye." (*Id*. at 5).

Assuming without deciding that this "EMTALA Referral" is authentic and subject to an exception to the hearsay rule, the undersigned finds that this record is insufficient to establish a genuine issue for trial on the issue of causation of Plaintiff Cisneros's alleged injuries. First, the identity of the reviewer is unknown. While he or she presumably is a physician familiar with appropriate practice in an emergency room, there is no evidence that this reviewer was an ophthalmologist or other physician whose "scientific, technical, or other specialized knowledge" would render the reviewer competent to express an opinion on medical causation of Cisneros's eye injury. Rule 702(a), Federal Rules of Evidence. Further, the reviewer fails to express an opinion that MNGH's alleged EMTALA violation <u>caused</u> Plaintiff Cisneros's blindness. The reviewer's report states in pertinent part: "Appropriate exam and treatment were delayed significantly. The patient lost vision in the affected eye." (Docket Entry No. 185-1 at 5). The temporal relationship alone – that Plaintiff's Cisneros's blindness occurred after his visits to MNGH – is insufficient to establish that delay in treatment attributable to MNGH caused his blindness. *See, e.g., Nieves v. Hospital Metropolitano*, 988 F.Supp. 127, 137 (D. Puerto Rico 1998).

For the reasons stated above, the undersigned Magistrate Judge finds that there is no genuine dispute on the issue of causation of Plaintiff Cisneros's injuries, that his case therefore fails for lack of proof, and that MNGH's motion for summary judgement should be granted.

Application of Damages Under TGTLA. Defendant further asserts that its liability, if any, is capped by the provisions of the Tennessee Governmental Tort Liability Act. Specifically, Defendant asserts that the Metropolitan Nashville Hospital Authority, which does business as MNGH, is a governmental entity created pursuant to the Metropolitan Hospital Authority Act codified at § 7-57-102(b) of the Tennessee Code. Further, as a governmental entity, Defendant asserts that claims for bodily injury or death to any one person are limited to $300,000 pursuant to T.C.A. § 29-20-403(b)(4).

Although this issue would be rendered moot if the Court accepts the recommendation stated above, the undersigned finds that the Sixth Circuit has recognized that claims for personal injury pursuant to EMTALA are subject to state law caps on damages. *Smith v. Botsford General Hospital*, 419 F.3d 513, 517 (6th Cir. 2005). Moreover, a sister district court, following a thorough analysis, has specifically found that the limitation of damages provision of the Tennessee Governmental Tort Liability Act is applicable to EMTALA claims. *Kiser v. Jackson-Madison County General Hospital District*, 2002 WL 1398543 at *7 (W.D. Tenn. May 3, 2002).

For the reasons stated above, the undersigned Magistrate Judge finds that pursuant to the provisions of the Tennessee Governmental Tort Liability Act, Defendant's liability, if any, is limited to $300,000.

**RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge recommends that Defendant's motion for summary judgment be GRANTED, that the complaint be dismissed with prejudice, and that

any pending motions be denied as moot. If the Court rejects this recommendation, the undersigned further recommends that the liability of Defendant, if any, in this action be limited to $300,000, pursuant to Tennessee Code Annotated § 29-20-403(b)(4).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 20th day of November, 2013.

    /s/ John S. Bryant
John S. Bryant
United States Magistrate Judge